**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

TARA WILLIAMS,

Plaintiff,

v.

CAPTION MANAGEMENT LLC, CAPTION PARTNERS II LP, CAPTION GP, LLC, WILLIAM COOPER III and JASON STRASSER,

Defendants,

and

CLARUS CORPORATION,

Nominal Defendant.

Case No.: 1:24-cv-01018-ALC

Related Case No.: 1:24-cv-01811-ALC

**ORAL ARGUMENT REQUESTED**

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS CAPTION MANAGEMENT LLC, CAPTION PARTNERS II LP, CAPTION GP, LLC, WILLIAM COOPER III, AND JASON STRASSER'S MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................1
ARGUMENT ............................................................................................................................1
I. Plaintiff Has Not Plausibly Pleaded That Defendants Are Section 16 Insiders. ..........................................................................................................1
II. Plaintiff Has Not Plausibly Pleaded That The RIA And Control Person Exclusions Do Not Apply. ......................................................................5
III. Plaintiff Has Not Plausibly Pleaded The Existence Of A Group...........................8
CONCLUSION ......................................................................................................................10

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)....................2, 9

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007)....................2

*Blue Water Navy Vietnam Veterans Ass'n, Inc. v. McDonald*,
830 F.3d 570 (D.C. Cir. 2016)....................6

*Brian B. Sand & Zachary B. Sand Joint Tr. v. Biotechnology Value Fund, L.P.*,
No. 16-cv-01313-RS, 2017 WL 3142110 (N.D. Cal. July 25, 2017)....................2

*Brian B. Sand & Zachary B. Sand Joint Tr. v. Biotechnology Value Fund, L.P.*,
No. 16-cv-01313-RS, 2017 WL 840357 (N.D. Cal. Mar. 3, 2017)....................4

*In re Edelman*,
295 F.3d 171 (2d Cir. 2002)....................6

*Glaser v. The9, Ltd.*,
772 F. Supp. 2d 573 (S.D.N.Y. 2011)....................6

*Gollust v. Mendell*,
501 U.S. 115 (1991)....................6

*Greenfield v. Cadian Capital Mgmt., LP*,
213 F. Supp. 3d 509 (S.D.N.Y. 2016)....................4, 7, 10

*Greenfield v. Criterion Cap. Mgmt.*,
No. 15-cv-3583-PJH, 2017 WL 2720208 (N.D. Cal. June 23, 2017)....................3, 4, 6

*Greenfield v. Criterion Cap. Mgmt., LLC*,
No. 15-cv-03583-PJH, 2016 WL 4425237 (N.D. Cal. July 5, 2016)....................3

*Hadar v. Concordia Yacht Builders, Inc.*,
886 F. Supp. 1082 (S.D.N.Y. 1995)....................3

*Levy v. Southbrook Int'l Invs., Ltd.*,
No. 99-cv-1480 NRB, 2000 WL 567008 (S.D.N.Y. May 10, 2000), *aff'd*, 263 F.3d 10 (2d Cir. 2001)....................7

*Meacham v. Knolls Atomic Power Lab.*,
554 U.S. 84 (2008)....................4

*Mercer v. Gupta*,
712 F.3d 756 (2d Cir. 2013)....................4

*Morales v. Quintel Ent., Inc.*,
249 F.3d 115 (2d Cir. 2001)....................8

*Pac. Coast Fed'n of Fishermen's Ass'ns v. Blank*,
693 F.3d 1084 (9th Cir. 2012)....................6

*Packer ex rel. 1-800-flowers.com, Inc. v. Raging Cap. Mgmt., LLC*,
242 F. Supp. 3d 141 (E.D.N.Y. 2017)....................3, 4

*Rubenstein v. Int'l Value Advisers, LLC*,
363 F. Supp. 3d 379 (S.D.N.Y. 2019), *aff'd*, 959 F.3d 541 (2d Cir. 2020)....................1, 8, 9, 10

*Rubenstein v. Int'l Value Advisers, LLC*,
959 F.3d 541 (2d Cir. 2020)....................8, 9

*Rubenstein v. Rofam Inv. LLC*,
805 F. App'x 75 (2d Cir. 2020)....................8

*Strauss ex rel. Servico, Inc. v. Am. Holdings, Inc.*,
902 F. Supp. 475 (S.D.N.Y. 1995)....................10

*Wellman v. Dickinson*,
682 F.2d. 355 (2d Cir. 1982)....................8

*Wright v. Ernst & Young LLP*,
152 F.3d 169 (2d Cir. 1998)....................5

**Other Authorities**

17 C.F.R. § 240.13d–3(a)....................9

17 C.F.R. § 240.16a–1(a)(1)(v)....................*3*

17 C.F.R. § 240.16a–1(a)(1)(vii)....................3

17 C.F.R. § 240.16a–1(a)(1)....................5

17 C.F.R. § 240.23d–3(b)....................7

17 CFR § 240.16a–11....................5

Wright & Miller, 5 Fed. Prac. & Proc. Civ. § 1270 (4th ed.)....................4

Black's Law Dictionary (1837)....................3

Defendants Caption Management LLC, Caption Partners II LP, Caption GP, LLC, William Cooper III, and Jason Strasser (collectively, the "Defendants") respectfully submit this reply in further support of their motion to dismiss plaintiff Tara Williams's ("Plaintiff") Complaint, ECF No. 1 (the "Complaint" or "Compl.") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

Plaintiff's entire opposition brief boils down to a single argument—that it is somehow immune from the pleading requirements of the Federal Rules of Civil Procedure. But these rules very much apply to actions brought pursuant to Section 16 ("Section 16") of the Securities Exchange Act of 1934 (the "Exchange Act"). And Plaintiff has not (and cannot) meet its burden of plausibly pleading that Defendants were ever statutory "insiders" to whom Section 16 even applies. Nor has Plaintiff pleaded any facts at all that would support treating Defendants as a "group" for purposes of Section 16.

## ARGUMENT

### I. Plaintiff Has Not Plausibly Pleaded That Defendants Are Section 16 Insiders.

Plaintiff contends that "a complaint pleading the general parameters of ownership, purchases and sales is sufficient to state a claim under §16(b) based upon the *Twombly* standard." (Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss (ECF No. 24) ("Opp. Br.") at 5.) But that is not the law under either Section 16(b) or *Twombly*. To state an actionable claim under Section 16(b), Plaintiff must plausibly plead the elements of the claim, which are a "(1) a purchase and (2) a sale of securities (3) *by an insider* (4) within a six-month period," where an "insider is either (1) any beneficial owner of more than 10% of any class of non-exempt equity security, (2) anyone who is a director of the issuer of any such security, and (3) anyone who is an officer of the issuer of any such security." *Rubenstein v. Int'l Value Advisers, LLC*, 363 F. Supp. 3d 379, 388 (S.D.N.Y. 2019) (cleaned up) (emphasis added), *aff'd*, 959 F.3d

541 (2d Cir. 2020). Here, Plaintiff must adequately plead that Defendants were 10 percent beneficial owners of Clarus securities as defined in Section 16 and its implementing regulations.

In *Twombly*, the Supreme Court made clear that "a formulaic recitation of the elements of a cause of action," or what Plaintiff calls "the general parameters" of the elements, is not sufficient to survive a motion to dismiss. 550 U.S. 544, 555 (2007). In other words, it is not enough just to state, as Plaintiff does here, that Defendants were "beneficial owners of greater than 10% of Clarus stock" and "Section 16(b) insider[s]." (Compl. ¶¶ 8–9, 11–13, 35.) A "complaint must contain sufficient factual matter" to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Nor can Plaintiff save its deficient pleading by merely pointing to Defendants' Schedule 13G filing (Keevil Decl. Ex. 2) (the "13G"), which addressed beneficial ownership as defined under Section 13 of the Exchange Act ("Section 13"), not Section 16. (Compl. ¶¶ 18–22.) "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short" of meeting the plausibility standard. *Iqbal*, 556 U.S. at 678 (internal quotations omitted); *see also Brian B. Sand & Zachary B. Sand Joint Tr. v. Biotechnology Value Fund, L.P.*, No. 16-cv-01313, 2017 WL 3142110, at *3 (N.D. Cal. July 25, 2017) (dismissal of Section 16(b) claim was appropriate where the parties did not dispute that defendants met the "broad definition of 'beneficial owner' articulated in Rule 13d-3(a)").

In an effort to avoid these basic pleading requirements, Plaintiff argues that it need not adequately allege that Defendants meet the statutory definition of a 10 percent beneficial owner because this element of the cause of action is somehow an affirmative defense. (Opp. Br. at 7.) Under Section 16's definition of "beneficial owner," which is set out in Rule 16a–1(a)(1), "any person" registered as an investment adviser ("RIA") under Section 203 of the Investment Advisers Act of 1940 is *deemed not to be* the "beneficial owner" of securities "held for the benefit of third

parties or in customer or fiduciary accounts in the ordinary course of business," as long as the securities are acquired "without the purpose or effect of changing or influencing control of the issuer or engaging in any arrangement subject to Rule 13d–3(b)." 17 C.F.R. § 240.16a–1(a)(1)(v) (the "RIA Exclusion"). Such securities are likewise *deemed not to be* "beneficially owned" by a control person of a RIA provided that the control person "[does] not own more than 1% of the outstanding shares of the relevant issuer, either directly or indirectly by subsidiaries or affiliates." *Greenfield v. Criterion Cap. Mgmt.*, No. 15-cv-3583, 2017 WL 2720208, at *2 (N.D. Cal. June 23, 2017); 17 C.F.R. § 240.16a–1(a)(1)(vii) (the "Control Person Exclusion").

Plaintiff relies on an Eastern District of New York decision, *Packer ex rel. 1-800-flowers.com, Inc. v. Raging Capital Management, LLC* ("*Raging Capital*"), to misconstrue the RIA Exclusion, often referred to as the "RIA exemption," as an exemption to Section 16(b) liability rather than part of the definition of a 10 percent beneficial owner. 242 F. Supp. 3d 141, 143 (E.D.N.Y. 2017). Without any analysis as to whether the RIA Exclusion is an element of Section 16(b) liability or an exemption to such liability, the Court in *Raging Capital* concluded that the purported "exemption is an affirmative defense not subject to resolution on a motion to dismiss." *Id.* But that is not correct. The RIA and Control Person Exclusions are properly "viewed as elements of the claim because they relate to the definition of 'beneficial owner of more than ten percent of any class of equity securities registered pursuant to section 12 of the Act,' and thus must be adequately pled." *Greenfield v. Criterion Cap. Mgmt., LLC*, No. 15-cv-03583, 2016 WL 4425237, at *8 (N.D. Cal. July 5, 2016).

This is consistent with well-established principles of law. Black's Law Dictionary defines an "affirmative defense" as "[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true."

Black's Law Dictionary (11th ed. 2019). In contrast, "[a] defense is not affirmative where it "merely negates an element of the plaintiff's prima facie case." *Hadar v. Concordia Yacht Builders, Inc.*, 886 F. Supp. 1082, 1089 (S.D.N.Y. 1995) (cleaned up); *see also* Wright & Miller, 5 Fed. Prac. & Proc. Civ. § 1270 (4th ed.) ("negative defenses" "den[y]" or "directly contradict elements of the plaintiff's claim for relief"). The RIA and Control Person Exclusions directly "negate" the core "insider" element of Plaintiff's claim, and as such, are not affirmative defenses.

Accordingly, a number of courts, including in this District, have considered the applicability of the RIA and Control Person Exclusions on a motion to dismiss. *See Criterion Capital Mgmt., LLC*, 2017 WL 2720208, at *5–*6 (granting motion to dismiss where defendants did not meet the definition of beneficial ownership due to RIA and Control Person Exclusions); *Brian B. Sand & Zachary B. Sand Joint Tr. v. Biotechnology Value Fund, L.P.*, No. 16-cv-01313, 2017 WL 840357, at *3 (N.D. Cal. Mar. 3, 2017) (granting motion to dismiss where defendants qualified for RIA and Control Person Exclusions); *Greenfield v. Cadian Cap. Mgmt., LP*, 213 F. Supp. 3d 509, 518 (S.D.N.Y. 2016) (denying motion to dismiss after the court determined the RIA Exclusion did not apply to defendants).

The cases on which Plaintiff relies are easily distinguishable. *See Raging Capital*, 242 F. Supp. 3d at 149–50 (emphasizing that "the question of the intent to acquire control" was "very much" "at issue" in concluding that dismissal was not appropriate); *Mercer v. Gupta*, 712 F.3d 756, 758 (2d Cir. 2013) (affirming dismissal in Section 16(b) case where insider status of the defendant was not at issue); *Meacham v. Knolls Atomic Power Lab.*, 554 U.S. 84, 91 (2008) (addressing exemptions to prohibitions against age discrimination in the Age Discrimination in Employment Act of 1967 ("ADEA"), not Section 16). Indeed, the Supreme Court's analysis of the exemptions at issue in *Meacham* supports the view that the RIA and Control Person Exclusions

are not affirmative defenses. In concluding that certain exemptions in the ADEA are affirmative defenses, the Supreme Court noted that they are "laid out apart from the prohibitions" in a "separate provision" and explicitly exempt conduct that is "otherwise prohibited." But unlike other SEC rules that explicitly provide for exemptions to what is "otherwise prohibited" under Section 16, the RIA and Control Person Exclusions are core parts of a definition that determines whether a person or entity is subject to the prohibitions of Section 16 in the first place. *Compare* 17 C.F.R. § 240.16a–1(a)(1) (RIAs and control persons "*shall not be deemed*" beneficial owners of certain securities) (emphasis added), *with, e.g.*, 17 C.F.R. § 240.16a–11 ("Any acquisition of securities resulting from the reinvestment of dividends or interest on securities of the same issuer *shall be exempt* from section 16 of the Act if the acquisition . . . .") (emphasis added).

## II. Plaintiff Has Not Plausibly Pleaded That The RIA And Control Person Exclusions Do Not Apply.

The Complaint does not allege a single reason that the RIA Exclusion does not apply to Caption Management LLC ("Caption") or Caption GP, LLC, or that the Control Person Exclusion does not apply to William Cooper or Jason Strasser. More specifically, the Complaint does not allege that the Clarus securities held by Caption's clients (including Caption Partners II LP (the "Caption Fund"), as well as other unnamed Caption clients) (1) were not held for the benefit of third parties in the ordinary course of business, (2) were acquired to change or influence control of Clarus, or (3) were acquired to evade reporting requirements in an arrangement subject to Rule 13d–3(b). In its opposition, Plaintiff now claims that the RIA Exclusion is inapplicable (1) because the Clarus shares were "not held for the benefit of third parties" and (2) because Caption "engage[d] in an[] arrangement subject to Rule 13d-3(b)."[1] (Opp. Br. at 7–8.) But Plaintiff is "not

[1] Plaintiff does not appear to argue that the Caption Defendants had a control purpose and in any event there are no facts alleged in the Complaint that could plausibly support such a purpose.

entitled to amend its complaint through statements made in motion papers," including its "opposition memoranda to [a] motion to dismiss." *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998) (citation omitted); *see also Glaser v. The9, Ltd.*, 772 F. Supp. 2d 573, 595 (S.D.N.Y. 2011) (court cannot consider assertions "made in a legal brief, but not in a pleading"). And in any event, Plaintiff's newly raised assertions are meritless.

*First*, even if Plaintiff's new allegation that Caption has an ownership position in the Caption Fund were accepted as true (which it cannot be), Section 16 does not require shares to be held "solely for the benefit of third parties." *Criterion Cap. Mgmt., LLC*, 2017 WL 2720208, at *5 (emphasis in original) (holding that complaint "does not allege facts sufficient to show that [RIA] does not trade for the benefit of third parties in the ordinary course of business" where it beneficially owned 2–12 percent of each of managed funds at issue); *see also In re Edelman*, 295 F.3d 171, 177 (2d Cir. 2002) ("When interpreting the meaning of a statute" courts must look to "the language of the statute itself."); *Blue Water Navy Vietnam Veterans Ass'n v. McDonald*, 830 F.3d 570, 575 (D.C. Cir. 2016) ("[W]e will not read the word 'only' into the statute 'when Congress has left it out.'") (quoting *Keene Corp. v. United States*, 508 U.S. 200, 208 (1993)). Expanding the scope of Section 16 liability as Plaintiff seeks to do here would defy the Supreme Court's express admonition to construe Section 16 "narrowly."[2] *See, e.g.*, *Gollust v. Mendell*, 501 U.S. 115, 122 (1991).

In support of its contrary position, Plaintiff cites to a single case, *Greenfield v. Cadian Capital Management, LP* ("*Cadian Capital*"), which held that the inference could be made that a

[2] Indeed, such an expansion would undermine the SEC's purpose in excluding RIAs from the beneficial owner definition in the first place. As the SEC has recognized "investors often require the investment adviser to have a significant financial investment in the hedge fund." *See* SEC, *Implications Of The Growth Of Hedge Funds*, at 62 (Sept. 2003), https://www.sec.gov/files/implications-growth-hedge-funds-09292003.pdf. This practice aligns the incentives of investment managers with their clients and decreases undue risks. *Id.* There is nothing in Rule 16a–1(a)(1) (or otherwise) to suggest that a RIA's investment in a hedge fund holding an issuer's securities negates the applicability of the RIA Exclusion.

RIA did not hold securities "for the benefit of third parties" where it "directly own[ed] capital *in each* of the [funds]" it managed. 213 F. Supp. 3d 509, 517 (S.D.N.Y. 2016) (emphasis added). But even if this holding were not contrary to the above-cited authority and well-established principles of statutory interpretation, it is inapposite. Unlike in *Cadian Capital*, Plaintiff does not (and cannot) allege that Caption held an ownership interest "in each" of the Caption clients that held Clarus securities. Plaintiff only alleges (now for the first time) an ownership interest in the Caption Fund. As to the Clarus shares held by Caption's other clients, there can be no claim that they were not held "for the benefit of third parties."

*Second*, Plaintiff's novel assertion that the RIA Exclusion does not apply to Caption because it was "engag[ed] in an[] arrangement subject to Rule 13d-3(b)" is conclusory, speculative, and wholly unsupported. Under Rule 13d–3(b), a person or entity is "deemed" to be a beneficial owner of securities for purposes of Sections 13(d) and 13(g) if they "directly or indirectly, create[] or use[] a trust, proxy, power of attorney, pooling arrangement or any other contract, arrangement, or device with the purpose of [sic] effect of divesting such person of beneficial ownership of a security or preventing the vesting of such beneficial ownership as part of a plan or scheme to evade the reporting requirements of section 13(d) or (g) of the Act." 17 C.F.R. § 240.23d-3(b). The Complaint alleges absolutely nothing of the sort. There is no mention of an "arrangement," let alone a "plan" or "scheme" to "evade reporting requirements." Quite the opposite, the Complaint alleges that Caption voluntarily disclosed that it had surpassed Section 13's reporting threshold and promptly filed a Schedule 13G. (Compl. ¶¶ 18–20.) This argument thus fails. *See Levy v. Southbrook Int'l Invs., Ltd.*, No. 99-cv-1480, 2000 WL 567008, at *5 (S.D.N.Y. May 10, 2000), *aff'd*, 263 F.3d 10 (2d Cir. 2001) ("Plaintiff's argument under Rule

13d–3(b) . . . fails as there is no factual basis to support the existence of such a plan or scheme to evade.”).

## III. Plaintiff Has Not Plausibly Pleaded The Existence Of A Group.

In its opposition, Plaintiff asks this Court to ignore clear and binding Second Circuit precedent on what is required to adequately plead a “group” under Section 16: “We straightforwardly conclude that the[] provisions of [Section 16 of the Exchange Act and its implementing regulations concerning groups] impose liability only when insiders enter an agreement . . . to trade the securities of a particular issuer.” *Rubenstein*, 959 F.3d at 546, 551 (affirming dismissal for failure to adequately plead a group); *see also see also Rubenstein v. Rofam Inv. LLC*, 805 F. App’x 75, 77 (2d Cir. 2020) (affirming dismissal because “an agreement, including an investment management agreement, must be issuer-specific before it can give rise to group liability”). The Second Circuit further clarified that “[a]n investment advisory client does not form a group with its investment advisor by merely entering into an investment advisory relationship.” *Rubenstein*, 959 F.3d at 546–47. Plaintiff nevertheless insists that all that is needed to establish a group is some vague “common objective.” (Opp. Br. at 9–10.) But the cases on which Plaintiff relies do not say that no agreement as to a particular issuer is needed, and even if they did, those cases predate *Rubenstein* by decades. *Wellman v. Dickinson*, 682 F.2d 355, 362–63 (2d Cir. 1982) (assessing whether alleged group members “agreed to dispose of [] Becton stock”); *Morales v. Quintel Ent., Inc.*, 249 F.3d 115, 123–24 (2d Cir. 2001) (“[T]he key inquiry in the present case is whether [the alleged group members] ‘agree[d] to act together for the purpose of acquiring, holding, voting or disposing of’ Quintel common stock.”).

Plaintiff has not pleaded a single fact concerning an agreement to trade in Clarus securities, as it plainly must to survive dismissal. Indeed, Plaintiff’s whole opposition includes less than a sentence that arguably addresses the need to plead such an agreement: “in *Rubenstein* there was

no identification of an agreement as to a specific issuer (unlike here)." (Opp. Br. at 11.) This naked assertion, which is not even in the Complaint, is not entitled to any weight. *Iqbal*, 556 U.S. at 678. And Plaintiff's other efforts to distinguish *Rubenstein* are similarly conclusory and untrue. (Opp. Br. at 11–12.) The issue in *Rubenstein*, as here, was whether a group was formed for purposes of Section 16 among a RIA and its clients. *Id.* at 545. And like in *Rubenstein*, there is simply no support for finding such a group.

Plaintiff's repeated reliance on William Cooper's September 2, 2022 email is likewise unavailing. (Opp. Br. at 10, 12.) Cooper wrote the email on behalf of Caption to apprise Clarus it would be filing a Schedule 13G to report its beneficial ownership of Clarus securities under Section 13. (*See* Keevil Decl. Ex. 3.) According to Plaintiff, the use of the term "we" and the fact that the aggregated holdings of Caption's clients were reported in the email "can only be interpreted as describing a coordinated effort towards a common objective." (Opp. Br. at 10.) Putting aside that, as described above, a "common objective" is not the standard for finding a group, the reality is that it is very common to use "we" when an individual writes on behalf of an entity (in this case, Caption).[3] As to the aggregated holdings, under Section 13, Caption itself was deemed to beneficially own the Clarus securities held by its clients by virtue of its voting or investment power over such securities. *See* 17 C.F.R. § 240.13d–3(a). That does not mean that Caption beneficially owned those securities for purposes of Section 16; nor does it in any way bear on whether Caption was part of a group. *Rubenstein*, 959 F.3d at 548 ("Advisors who purchase a sufficient quantity of a security in their clients' managed accounts will become subject to Section 13(d)'s disclosure requirement even if they do not form an insider group with their clients.").

[3] Moreover, even if Mr. Cooper were writing on behalf of each of Caption's clients, that would not signal a "common objective." An investment adviser's fiduciary duty requires that the adviser manage each individual client account according to that client's individual best interests. *See* Commission Interpretation Regarding Standard of Conduct for Investment Advisers, Advisers Act Release No. IA-5248, 84 Fed. Reg. 33669, 33671, 33672–33673 (June 5, 2019).

Finally, Plaintiff argues that its allegations that Cooper and Strasser are managing members of the other Caption Defendants and that they are "direct owners of 25% to 50% of Caption, each" is sufficient to plead a group. (Opp. Br. at 10.) The cases on which Plaintiff relies predate *Rubenstein* and in any event are inapposite. *Cadian Capital*, 213 F. Supp. 3d 509; *Strauss ex rel. Servico, Inc. v. Am. Holdings, Inc.*, 902 F. Supp. 475 (S.D.N.Y. 1995). Indeed in *Strauss*, which did not involve the relationship between a RIA and its clients at all, the court acknowledged that "an allegation of common control, standing alone, [does not] suffice to give rise to an inference of the agreement that is essential to the existence of a Section 13(d) group." 902 F. Supp. at 479. And as discussed in Section B above, in *Cadian Capital*, the investment funds that held the securities at issue all shared the same general partner and managing member, which is not the case here. 213 F. Supp. 3d at 517.

## CONCLUSION

For the reasons above, Defendants respectfully request that the Complaint be dismissed with prejudice and that Plaintiff's request to amend the Complaint be denied.

Dated: June 21, 2024
New York, New York

**WILLKIE FARR & GALLAGHER LLP**

*/s/ Tariq Mundiya*
Tariq Mundiya
Pia Williams Keevil
787 Seventh Avenue
New York, New York 10019
Telephone: 212-728-8000
Email: tmundiya@willkie.com
pkeevil@willkie.com

*Attorneys for Defendants Caption Management LLC, Caption Partners II LP, Caption GP, LLC, William Cooper III, and Jason Strasser*